IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS HUBERT, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 20-03340-CV-S-WBG |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**ORDER AND OPINION REVERSING ACTING COMMISSIONER'S FINAL DECISION DENYING BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS**

Pending is Plaintiff Thomas Hubert's appeal of Defendant Acting Commissioner of Social Security's final decision denying his application for supplemental security income. After carefully reviewing the record and the parties' arguments, the Acting Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings.

## I. BACKGROUND

Plaintiff was born in 1974 and has a high school education. R. at 21, 34, 111, 211. He previously worked as a cleaner, poultry hanger, mailing machine operator, welder, and assembler. R. at 20, 56-58, 206. In September 2018, Plaintiff protectively applied for supplemental security income, alleging a disability onset date of September 10, 2018. R. at 12, 111-16. His application was denied, and he requested a hearing before an administrative law judge ("ALJ"). R. at 79-82, 89-91.

In January 2020, ALJ Mark Clayton held a hearing during which Plaintiff and a vocational expert testified. R. at 28-63. On February 24, 2020, the ALJ issued his decision. R. at 12-22.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, is automatically substituted as Defendant in this suit.

Therein, he concluded Plaintiff suffers from the following severe impairments: "degenerative disc disease, obesity, diabetes mellitus, hypertension, obstructive sleep apnea, anxiety, and PTSD." R. at 14. The ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. He found Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with the following additional limitations:

> [T]he claimant can never climb ladders, ropes, scaffolds, occasionally climb ramps, stairs, crawl, frequently stoop, kneel, crouch, would need to avoid concentrated exposure to extreme temperatures, avoid even moderate exposure to vibration, and avoid hazards such as unprotected heights and dangerous moving machinery. The claimant is limited to simple, routine, repetitive type task involving only simple work-related decision-making in an environment with limited contact with others to occasional, can adapt to change to a basic work routine that is introduced gradually. The claimant would need an assistive handheld device for ambulation.

R. at 16.

Based upon his review of the record, the RFC, and hearing testimony, the ALJ found Plaintiff could work as an addresser, lens inserter, or final assembler, and thus, is not disabled. R. at 21. Plaintiff unsuccessfully appealed the ALJ's decision to the Social Security Administration's Appeals Council. R. at 1-3. He now appeals to this Court. Doc. 3.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether the Commissioner's decision complies with relevant legal standards and whether substantial evidence supports the Commissioner's findings. 42 U.S.C. § 405(g); *Lucus v. Saul,* 960 F.3d 1066, 1068 (8th Cir. 2020); *Turpin v. Colvin,* 750 F.3d 989, 992-93 (8th Cir. 2014). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). An ALJ "may not silently disregard" duly promulgated regulations by the Social Security Administration. *Brueggemann v. Barnhart,*

348 F.3d 689, 694 (8th Cir. 2003). A failure to follow applicable regulations constitutes legal error. *Id.* at 695. No deference is owed to the ALJ's legal conclusions. *Id.* at 692. A challenge to the procedures used by the ALJ is reviewed de novo. *See id.*

Regarding sufficiency of the evidence, a reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted).

In evaluating for substantial evidence, a court must consider evidence supporting as well as evidence detracting from the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2015). "As long as substantial evidence in the record supports the Commissioner's decision, [a reviewing court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). If after reviewing the entire record it is possible to draw two inconsistent positions and the Commissioner adopted one of those positions, the court must affirm. *See Anderson*, 696 F.3d at 793.

### III. DISCUSSION

Plaintiff contends this matter must be reversed because the ALJ (A) erred in finding Plaintiff did not meet or medically equal Listing 1.04A, and (B) improperly considered Plaintiff's testimony about his cane usage. *See* Doc. 12.

**A.   Listing 1.04A**

When determining whether a claimant is disabled, the ALJ employs a five-step process. 20 C.F.R. § 416.920(a)(4). Under step three, which is relevant here, the ALJ considers the severity of

the claimant's impairment and whether the impairment meets or equals a listed impairment. *Id*. § 416.920(a)(4)(iii). "To meet a listing, a claimant must show that he or she meets all of the criteria for the listed impairment. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal quotations and citations omitted). The claimant bears the burden of establishing all criteria are met. *Id*. (citation omitted).

At issue is Listing 1.04A, which pertains to "[d]isorders of the spine . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.[2] Examples of spine disorders, per the listing, include "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [and] vertebral fracture." *Id*. To meet Listing 1.04A, there must be "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id*.

The ALJ found Plaintiff did "not meet or medically equal listing 1.04 because the record does not show that [his] degenerative disc disease results in a compromise of a nerve root or the spinal cord." R. at 14. Plaintiff argues the ALJ (1) erred in concluding there was no evidence of nerve compression, (2) failed to analyze the remaining listing requirements, and (3) neglected to consider whether Plaintiff equally met the listing in conjunction with his obesity. Doc. 12 at 6-11.

---

[2] After the ALJ's decision was issued in this matter, the Social Security Administration revised the criteria for Listing 1.04A. In their briefing, both parties rely on the previous version of Listing 1.04. Doc. 12 at 7; Doc. 20 at 5-6. The Court does the same.

**(1) Nerve Compression**

A July 2018 CT of Plaintiff's lumbar spine showed "[l]eft subarticular disc protrusion L4-5 impinges the traversing left L5 nerve root in the subarticular recess" and "[m]oderate to severe left L5-S1 foraminal narrowing impinges the exiting left L5 nerve root." R. at 247, 255. Plaintiff's counsel referenced this CT during the January 2020 hearing before the ALJ, specifically stating Plaintiff suffered from an impinged nerve root. R. at 31-33. The ALJ, however, did not reference or discuss the July 2018 CT in his decision. *See* R. at 12-22. And, contrary to the CT findings, the ALJ determined Plaintiff did <u>not</u> suffer from a compromised nerve root. R. at 14.[3]

Plaintiff contends this error requires reversal and remand. Doc. 12 at 7-8. Defendant does not address this argument; rather, she focuses on whether Plaintiff satisfied the other listing requirements. *See* Doc. 20 at 5-9. The record demonstrates Plaintiff suffered from nerve impingement, and thus, satisfies the first requirement of Listing 1.04A. Accordingly, the Court finds the ALJ erred in finding there was no evidence to support such a finding.

The Court's analysis, however, does not stop here. If the record establishes Plaintiff met all listing requirements, remand is required. *See Priesmeyer v. Astrue*, No. 07-4233-CV-C-NKL, 2008 WL 4816836, at *7-8 (W.D. Mo. Oct. 27, 2008) (remanding the Commissioner's decision because the record demonstrated the claimant met all listing requirements). But if the record demonstrates Plaintiff did not satisfy all listing requirements, remand is not required. *See Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017) (finding remand was not required when the ALJ failed to provide a

---

[3] If ALJ found nerve root impingement was not the equivalent of a "compromised nerve root" required in Listing 1.04A, he did not indicate or explain why the terms were not comparable. *See* R. at 14. Regardless, the regulations explain "[d]isorders of the spine, listed in 1.04, result in limitations because of distortion of the bony and ligamentous architecture of the spine and associated **impingement on nerve roots** (including the cauda equina) or spinal cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00K (2018) (emphasis added). Also, courts have indicated compromised nerve root includes a nerve root impingement. *See Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (finding substantial evidence supported the ALJ's finding that the claimant did not meet Listing 1.04A because, among other things, an MRI "showed no superimposed disc herniation, central or lateral canal stenosis, or cord or nerve root impingement."); *Curley v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x 41, 43-44 (2d Cir. 2020) (observing the claimant had "some impingement of the left nerve root sleeve" but did not satisfy the other Listing 1.04A requirements).

detailed explanation as to why the claimant did not meet a listing because the claimant did not show she satisfied the other listing requirements).

### (2) Other Listing Requirements

To meet Listing 1.04A, a claimant's nerve root compression must be accompanied by "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness accompanied by sensory or reflex loss), and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. The ALJ focused solely on whether Plaintiff suffered from a nerve impingement; he did not discuss the other requirements. *See* R. at 14-15. Plaintiff contends the record demonstrates he satisfied the other requirements. Doc. 12 at 8-10 (citing medical records indicating, among other things, pain, limited range of motion, sensory loss, and positive straight-leg test). Defendant argues the record supports the ALJ's conclusion that Plaintiff did not meet Listing 1.04A. Doc. 20 at 5-9 (noting "fairly unremarkable findings," findings "incongruent with the requirements of Listing 1.04A," symptoms waxing and waning, and the listing's medical criteria not being simultaneously present).

The record contains inconsistent findings and observations among medical professionals. *Compare* R. at 248 "[l]umbar radiculopathy present"), 281-84 ("slow, unsteady gait," "[s]ensory examination was decreased bilaterally," "straight leg test," "unable to walk on heels and toes," "abnormal tandem gait," "decreased range of motion at his hips and spine"), 458 and 468 ("[p]ain worse with flexion" throughout lumbar spine), 474 ("[p]ain worse with external rotation" of right hip); 500 ("antalgic gait," "[m]arkedly diminished sensation" in feet), *with* R. 463, 468, 484, 489, and 494 ("[n]ormal gait and station" and "[g]ood and equal strength to flexion and extension of the . . . lower extremities,"); 474 ("normal gait and station"). In addition, the Court notes there are conflicts within treatment notes, especially with regard to records from the physician treating

Plaintiff for diabetes. For example, Plaintiff often reported severe pain (e.g., pain level was a 7 or 8 out of 10) but the physician generally noted back pain and/or joint paint were "[n]ot [p]resent," and Plaintiff had "[g]ood and equal strength to flexion and extension of the bilateral . . . lower extremities." *See* R. at 462-63, 471, 473-74, 476, 478-79, 481, 483-84, 488-89, 494, 500. The ALJ, however, did not discuss these discrepancies when he considered the medical evidence. *See* R. at 17-19. Instead, it appears he relied on the normal findings in these records. *See id*.

While an ALJ's failure to explain factual findings may not be a sufficient reason for setting aside his decision, "[r]emand is warranted where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision." *Vance*, 860 F.3d at 1118 (citation and internal quotations omitted). The record before this Court includes medical evidence showing pain emanating from Plaintiff's back and down his legs, limited range of motion, decreased sensation, muscle weakness, inability to walk on heels and toes, difficulty with ambulation, and positive straight leg test. *See*, *e.g.*, R. at 245, 248, 280-82, 284, 286, 358, 500. Because the ALJ incorrectly determined there was no evidence of nerve compression, and the record provides evidence that Plaintiff met the other listing requirements, the Court concludes it must reverse the Acting Commissioner's decision. *See Vance*, 860 F.3d at 1118-19; *Priesmeyer*, 2008 WL 4816836, at *7-8. Upon remand, the ALJ shall reconsider whether Plaintiff meets Listing 1.04A. If the ALJ finds Plaintiff does not meet Listing 1.04A, the ALJ must identify the evidence on which the ALJ relied in reaching this conclusion.[4]

---

[4] The parties dispute whether Plaintiff established he satisfied all requirements simultaneously, and whether Plaintiff must satisfy that burden. *See* Doc. 20 at 6-8; Doc. 21 at 1-2. Because the ALJ failed to consider whether Plaintiff demonstrated the Listing 1.04A requirements beyond nerve root compression, the issue raised by the parties is not before the Court.

### (3) Medical Equivalence of Listing 1.04A

Plaintiff also maintains his medical impairment equally meets Listing 1.04A. A claimant's impairment may be "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). Because "obesity may increase the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing," obesity by itself or in combination with another impairment(s) "may medically equal a listing." SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). Here, the ALJ stated he considered Plaintiff's obesity "in terms of its possible effects on [his] ability to work and ability to perform activities of daily living." R. at 15. Although Plaintiff's obesity was found to be severe, the ALJ determined "the signs, symptoms and laboratory findings of his obesity are not of such severity as found in any listing." *Id*.

Plaintiff maintains the ALJ erred in failing to consider whether his back impairment in combination with his morbid obesity medically equaled Listing 1.04A. Doc. 12 at 10. Referencing the same medical records cited in support of her argument that Plaintiff failed to meet Listing 1.04A, Defendant argues Plaintiff failed to show medical findings equaled the severity of a listed impairment. Doc. 20 at 8. For the same reasons set forth *supra*, section III(A)(2), the Court reverses the Acting Commissioner's decision. Upon remand, the ALJ shall consider and explain whether Plaintiff's back impairment in combination with his severe impairment of obesity medically equals Listing 1.04A.

### B.  Cane Usage

The ALJ's RFC limited Plaintiff to, among other things, using "an assistive handheld device for ambulation." R. at 16. Plaintiff argues the ALJ improperly evaluated his testimony about his cane usage, and the RFC should have required a cane for ambulation <u>and</u> standing. Doc. 12 at 11-15. When evaluating a claimant's subjective complaints, the ALJ "must consider objective medical

8

Case 6:20-cv-03340-WBG   Document 24   Filed 03/31/22   Page 8 of 10

evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citations omitted). The ALJ is not required to discuss each factor. *Id*. (citation omitted). Further, the "ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted).

On appeal, this Court does not reweigh the evidence before the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citation omitted). And the Court must "defer to the ALJ's determinations regarding" a claimant's subjective complaints "so long as they are supported by good reasons and substantial evidence." *Id*. (citation omitted). This is because determinations about a claimant's subjective complaints "are in the province of the ALJ," and this Court "will not substitute its opinion for the ALJ's, who is in a better position to gauge [subjective complaints] and resolve conflicts in evidence." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (citations omitted).

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but his statements about the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." R. at 17. The ALJ noted Plaintiff was prescribed a cane in September 2019, and he testified that he used a cane "to help with standing and walking." R. at 17-18. But the ALJ did not discuss whether Plaintiff's testimony about using a cane to stand was (or was not) consistent with the record. *See* R. at 17-19. Yet, the RFC did not require a cane for standing, and the ALJ did not explain why this additional limitation was not included. R. at 16.

Based on the foregoing, the Court finds the ALJ's implicit determination to discredit Plaintiff's testimony about using a cane to stand without an explanation as to why he made that determination is not supported by "good reasons and substantial evidence." *See Guilliams*, 393 F.3d at 801. Accordingly, the Court must reverse the Acting Commissioner's decision denying benefits. Upon remand, the ALJ shall incorporate Plaintiff's use of a cane for standing in the RFC or explain why Plaintiff's testimony about requiring a cane to stand is not supported by the record.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds the Acting Commissioner's decision does not comply with the relevant legal standards, and substantial evidence in the record as a whole does not support the Acting Commissioner's decision. Accordingly, the Acting Commissioner's decision is **REVERSED**, and the matter is **REMANDED** for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

DATE: March 31, 2022                  /s/ W. Brian Gaddy
                                       W. BRIAN GADDY
                                       UNITED STATES MAGISTRATE JUDGE